# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | § Chapter 11 Case |
| | § |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., et. al., | § Case No. 08-40047 (rfn-11) |
| | § |
| | § Jointly Administered |
| Debtors | § |
| | § Hearing: April 21, 2009 at 1:30 p.m. |

## SUMMARY OF THIRD INTERIM AND FINAL APPLICATION OF OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM FEBRUARY 5, 2008 THROUGH JANUARY 31, 2009

| | |
|---|---|
| Name of Applicant: | Alvarez & Marsal North America, LLC |
| Authorized to Provide Professional Services to: | Heartland Automotive Holdings, Inc. and its affiliated debtors |
| Effective Date of Retention: | February 5, 2008 |
| Period for which compensation and reimbursement is sought: | February 5, 2008 through January 31, 2009 |
| Amount of compensation sought as actual, reasonable, and necessary: | $3,302,892.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $217,585.22 |
| Total Gross Amount Requested: | $3,520,477.22 |

| Total Gross Amount Requested and Approved in First and Second Interim Fee Applications: | $2,473,695.35 |
|---|---|
| | |
| **First Interim Fee Application** | Filed: April 30, 2008; Approved: June 10, 2008. |
| Period for which compensation and reimbursement was sought: | February 5, 2008 through March 31, 2008 |
| Amount of interim compensation sought as actual, reasonable, and necessary in First Interim Fee Application: | $658,989.50 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary in First Interim Fee Application: | $46,857.78 |
| **Second Interim Fee Application** | Filed: September 4, 2008; Approved: October 6, 2008. |
| Period for which compensation and reimbursement was sought: | April 1, 2008 through July 31, 2008 |
| Amount of interim compensation sought as actual, reasonable, and necessary in Second Interim Fee Application: | $1,657,979.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary in Second Interim Fee Application: | $109,869.07 |
| | |
| **Third Interim Fee Application** | Filed in connection with the Final Application |
| Period for which compensation and reimbursement is sought: | August 1, 2008 through January 31, 2009 |
| Amount of interim compensation sought as actual, reasonable, and necessary: | $985,923.50 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $60,858.37 |
| Total Gross Amount Requested in Third Interim Application: | $1,046,781.87 |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| IN RE: | § Chapter 11 Case |
| | § |
| HEARTLAND AUTOMOTIVE HOLDINGS, INC., et. al., | § Case No. 08-40047 (rfn-11) |
| | § |
| | § Jointly Administered |
| Debtors | § |
| | § Hearing: April 21, 2009 at 1:30 p.m. |

**THIRD AND FINAL APPLICATION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISORS FOR THE DEBTORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF OUT OF POCKET EXPENSES INCURRED FOR THE PERIOD FEBRUARY 5, 2008 THROUGH JANUARY 31, 2009**

**TO THE HONORABLE RUSSELL F. NELMS,**
**UNITED STATES BANKRUPTCY JUDGE:**

Alvarez & Marsal North America, LLC ("A&M" or the "Applicant"),

restructuring advisor for Heartland Automotive Holdings, Inc. and its affiliated debtors

(collectively, the "Debtors" or the "Reorganized Debtors"), submits this third interim and final

fee application (the "Final Application") seeking allowance of interim compensation for

professional services rendered and reimbursement of expenses incurred for the period from

August 1, 2008 through January 31, 2009 (the "Third Interim Application Period") and final

allowance of compensation for professional services rendered and reimbursement of expenses

incurred for the period February 5, 2008 through January 31, 2009 (the "Final Application

Period"). In support of the Final Application, the Applicant respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      From the outset of the cases, the Applicant worked with the Debtors, their counsel, and other advisors to determine the appropriate path that would not only yield the best possible return for creditors, but would ultimately allow the Debtors to emerge from bankruptcy a stronger and more successful company.  On January 30, 2009, the Debtors consummated a fully consensual plan of reorganization that provided for payment in full for all creditors.

2.      Prior to the filing of the Debtors' chapter 11 cases, the Debtors and their franchisor, Jiffy Lube International, Inc. ("JLI") were entrenched in opposite corners as a result of years of animosity and distrust that had built up between them.  In addition, the Debtors experienced a decline in revenue resulting from, among other things, changing macroeconomic conditions.  These issues precipitated the filing of the Debtors' cases and certainly didn't vanish once the cases were filed.  The newly filed Debtors had to run their business in a struggling economy and adjust to their role as debtors-in-possession while devising a new strategy for the future.  With the assistance and guidance of the Applicant and their other advisors, the Debtors were able to resolve their disputes with JLI and succeeded in emerging from chapter 11 as a healthy company with a bright future.

3.      Many of the Debtors' constituents played vital roles in these cases.  Chief among them were the Debtors' loyal employees, the professionals who worked in tandem with the Applicant throughout these cases and the Committee.  Each contributed materially to the Debtors' successful emergence from chapter 11.

4.      Throughout the cases the Applicant worked with the Debtors' management, the board of Directors (the "Board"), and the Debtor's counsel and other advisors to complete the case in a successful and expeditious manner - from petition date to confirmation in just over 365

days.  During the cases, the Applicant devoted significant time and effort to a number of tasks including but not limited to (i) developing the 2008 budget, (ii) responding to information requests from the financial advisors to the lenders and the Committee, (iii) performing store profitability analysis and coordinating the renegotiation of leases and closure of unprofitable stores, (iv) supporting negotiations with alternative oil suppliers, (v) assisting the Debtors in the preparation of the Statement of Financial Affairs and Schedules of Assets and Liabilities as well as other required bankruptcy reporting, (vi) assisting the Debtors with DIP financing, cash management, and cash forecasting, and (vii) assisting the Debtors with reconciling the numerous claims filed in these cases.

5.      Accordingly, by this Final Application and pursuant to sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101 et al. (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Chapter 11 Professionals and Committee Members, dated February 12, 2008 (the "Interim Compensation Order") (Doc. # 203), and the Guidelines for Compensation and Expense Reimbursement of Professionals for the United States Bankruptcy Court, Northern District of Texas, effective January 1, 2001 (the "Guidelines"), the Applicant requests that this Court authorize: (I) interim allowance of compensation for professional services rendered and reimbursement of expenses incurred during the Third Interim Application Period in the aggregate amount of $1,046,781.87 as follows: (a) compensation in the amount of $985,923.50 (which includes the amount set forth in subsection (c) hereof) for fees incurred in connection with services rendered on behalf of the Debtors during the Third Interim Application Period; (b) reimbursement of actual and necessary expenses in the amount of $60,858.37 incurred by the Applicant during the Third Interim

Application Period; and (c) payment of fees incurred for services rendered during the Third

Interim Application Period that where held back, and not yet paid to the Applicant, in accordance

with the Interim Compensation Order in the amount of $178,730.80[1] (the "Holdback"); and (II)

final allowance in full of compensation for professional services rendered and reimbursement of

expenses incurred during the Final Application Period in the aggregate amount of $3,520,477.22

as follows: (a) compensation in the amount of $3,302,892.00  for fees incurred in connection

with services rendered on behalf of the Debtors during the Final Application Period; and (b)

reimbursement of actual and necessary expenses in the amount of $217,585.22 incurred by the

Applicant during the Final Application Period.[2]

6.    During the Final Application Period, in the exercise of its discretion, the

Applicant voluntarily wrote off approximately $131,000 in fees, as reflected in its Monthly Fee

Statements (as defined below).  These fees primarily related to the 50% allowed billing for travel

time.

## JURISDICTION

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157.

---

[1]    There are total unpaid fees and expenses of $272,017.15 inclusive of the Holdback and unpaid invoices
from December and January as of the date of this Application.
[2]    All services rendered by the Applicant for which compensation is sought pursuant to this Final Application
were rendered solely to or on behalf of the Debtors.  No payments were received by the Applicant from any other
source for services rendered in connection with these cases.

## PROCEDURAL BACKGROUND

8.    On January 7, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  Pursuant to an order dated January 9, 2008, the Debtors' chapter 11 cases are being jointly administered.

9.    On January 17, 2008, the Office of the United States Trustee for the Northern District of Texas (the "US Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in these cases.

10.    On December 23, 2008, the Debtors filed their Amended Joint Chapter 11 Plan of Reorganization of Heartland Automotive Holdings, Inc. (the "Plan") and the Disclosure Statement Related to the Plan (the "Disclosure Statement").  The Debtors and the Committee were co-proponents of the Plan.  On January 16, 2009 the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order").

11.    On January 30, 2009, the Debtors consummated the Plan and emerged from chapter 11 (the "Effective Date").

## RETENTION AND PRIOR COMPENSATION

12.    The Applicant's employment as Debtors' restructuring advisors was approved by Order entered on March 18, 2008 (Docket #303) (the "Retention Order") Nunc Pro Tunc to February 5, 2008.

13.    Applicant has not received a retainer.

14.    This is the Applicant's third and final application for allowance of compensation and reimbursement of expenses.  The Applicant's First Interim Application covered the period February 5, 2008 through March 31, 2008 and requested approval of fees in

the amount of $658,989.50 and expenses in the amount of $46,857.78. On June 9, 2008, this court held a hearing on the First Interim Fee Application, and signed an order on June 10, 2008 (docket no. 479) granting approval of the Applicant's fees and expenses in the amount of $658,989.50 and $46,857.78 respectively, and directed the Debtors to pay the Applicant its unpaid fees of $131,797.90. The Applicant's Second Interim Application covered the period April 1, 2008 through July 31, 2008 and requested approval of fees in the amount of $1,657,979.00 and expenses in the amount of $109,869.07. On October 1, 2008, this court held a hearing on the Second Interim Fee Application, and signed an order on October 6, 2008 (docket no. 798) granting approval of the Applicant's fees and expenses in the amount of $1,657,979.00 and $109,869.07 respectively, and directed the Debtors to pay the Applicant its unpaid fees of $331,595.80.

15.    Pursuant to the Interim Compensation Order, an interim fee application for the period covering August 1, 2008 through November 30, 2008, was to be filed on or before December 31, 2008. Because the Debtors were nearing emergence from chapter 11, the Applicant determined, after consultation with the Debtors and the other professionals in the cases, that it would be more efficient and cost effective for the estates, as well as less burdensome on the Court, to forgo seeking interim compensation for such period and simply combine interim relief for the extended Third Interim Application Period in this Final Application.

## INTERIM COMPENSATION NOT PREVIOUSLY APPROVED

16.   For the Third Interim Application Period, the Applicant seeks interim and final allowance of $985,923.50 in fees for 2,707.7 hours of professional services rendered and reimbursement of out-of-pocket expenses in the amount of $60,858.37.

17.   For the Third Interim Application Period and pursuant to the Court's Compensation Procedures Order, the Applicant has been paid $714,923.20 in fees for services rendered, and $59,841.52 for expenses, for an aggregate amount of $774,764.72.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

18.   During the Third Interim Application Period, Applicant billed the Debtors $985,923.50 for a total of 2,707.7 hours of professional services rendered in connection with this case which represents a reasonable fee for such services.  A summary schedule outlining the professional fees by task categories is summarized in **Exhibit A**.  The hourly rates and fees charged for such professional services are set forth in **Exhibit B**.  A summary schedule outlining the professional fees rendered by professional by task is set forth in **Exhibit C**.  The professional services rendered by Applicant are more particularly described in the attached **Exhibit D**, which states the date on which the services were rendered, the persons rendering such services, a description of the services rendered, and the time expended with respect thereto.  These services were reasonable and necessary in the best interest of the estate.

19.   In addition, during the Third Interim Application Period, the Applicant incurred $60,858.37 in out-of-pocket expenses in connection with its representation of the Debtors.  These expenses are more particularly summarized in **Exhibit E** and described in detail

in **Exhibit F**. All out-of-pocket expenses were necessary and reasonable to Applicant's duties

on behalf of the Debtors.

20. During the Third Interim Application Period, Applicant performed

professional services for the Debtors in several different matters, as summarized below:

| THIRD INTERIM APPLICATION PERIOD SUMMARY OF TOTAL FEES BY TASK CATEGORY FOR ALVAREZ & MARSAL NORTH AMERICA, LLC August 1, 2008 through January 30, 2009 | | |
| --- | --- | --- |
| **TASK DESCRIPTION** | **TOTAL HOURS** | **TOTAL FEES** |
| Admin | 13.30 | $5,355.00 |
| Asset Disposition | 26.20 | $10,995.00 |
| Board | 49.70 | $20,770.00 |
| Business Plan | 732.70 | $322,490.00 |
| Cash | 137.40 | $52,015.00 |
| Claims | 790.50 | $238,926.00 |
| Contract Negotiations | 65.10 | $19,620.00 |
| Court Hearings | 8.60 | $3,830.00 |
| Creditor | 79.60 | $30,815.00 |
| DIP | 5.00 | $1,650.00 |
| Fee Applications | 67.20 | $13,052.50 |
| Information Requests | 100.30 | $29,765.00 |
| Jiffy Lube International Discovery | 33.10 | $11,120.00 |
| Lease Analysis | 356.80 | $136,995.00 |
| Monthly Operating Report | 38.70 | $10,540.00 |
| Operations | 33.10 | $11,675.00 |
| Plan of Reorganization | 149.40 | $57,150.00 |
| Statements & Schedules | 8.20 | $3,425.00 |
| Tax | 12.80 | $5,735.00 |
| **Total** | **2,707.70** | **$985,923.50** |

21. During the Final Application Period, the Applicant billed the Debtors for
8,502.5 hours or $3,302,892.00 in fees and (b) reimbursement of actual and necessary expenses
in the amount of $217,585.22 as detailed in **Exhibits G through L** and summarize below:

| FINAL APPLICATION PERIOD SUMMARY OF TOTAL FEES BY TASK CATEGORY FOR ALVAREZ & MARSAL NORTH AMERICA, LLC August 1, 2008 through January 30, 2009 | | |
|---|---|---|
| **TASK DESCRIPTION** | **TOTAL HOURS** | **TOTAL FEES** |
| Admin | 48.40 | $21,695.00 |
| Asset Disposition | 127.90 | $47,770.00 |
| Board | 161.50 | $71,720.00 |
| Business Plan | 1,851.90 | $866,300.00 |
| Cash | 323.90 | $126,805.00 |
| Claims | 988.90 | $304,444.00 |
| Contract Negotiations | 338.00 | $104,380.00 |
| Court Hearings | 53.80 | $22,050.00 |
| Creditor | 309.40 | $131,030.00 |
| DIP | 140.40 | $71,690.00 |
| Employee Retention | 129.40 | $57,205.00 |
| Fee Applications | 184.60 | $35,723.00 |
| Information Requests | 527.80 | $180,345.00 |
| Jiffy Lube International Discovery | 63.10 | $26,270.00 |
| Lease Analysis | 1,253.70 | $468,190.00 |
| Monthly Operating Report | 147.60 | $50,315.00 |
| Operations | 647.50 | $311,705.00 |
| Plan of Reorganization | 149.40 | $57,150.00 |
| Point of Sale | 41.50 | $21,740.00 |
| Retention | 2.90 | $915.00 |
| Statements & Schedules | 991.20 | $316,265.00 |
| Tax | 19.70 | $9,185.00 |
| **Total** | **8,502.50** | **$3,302,892.00** |

a.      Administrative – Less than 1% of the fees in this Application relate to time spent by the Applicant on administrative tasks including development of case timelines, review of the court docket, and assisting the Debtors in the management of the professional fee payment process. All of these tasks were necessary to effectively manage the Applicant's various projects and in assisting the Debtors in managing some of the administrative aspects of the bankruptcy process. In connection with this Subject Matter, A&M expended (i) 13.3 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $5,355.00, and (ii) 48.4 hours during the Final Application Period for which A&M seeks final compensation of $21,695.00.

b.      Asset Disposition – The Applicant assisted the Debtors with non-core asset dispositions, which primarily related to efforts to sell 20 non-core stores including the negotiation of a contract with a business broker and review of potential offers. In connection with this Subject Matter, A&M expended (i) 26.2 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $10,995.00, and (ii) 127.9 hours during the Final Application Period for which A&M seeks final compensation of $47,770.00.

c.      Board – The Applicant prepared for and attended meetings with the Company's board of directors to brief the board on the status of the bankruptcy proceeding, the development of the business plan, and related issues. In connection with this Subject Matter, A&M expended (i) 49.7 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $20,770.00, and (ii) 161.5 hours during the Final Application Period for which A&M seeks final compensation of $71,720.00.

d.      Business Plan – The Applicant devoted significant effort to assisting the Debtors on various matters associated with exploring strategic options and gathering information

ultimately required to develop a 5-year business plan. The Applicant's work included preparing

for and participating in discussions with numerous potential oil suppliers, critical discussions

with management and the Debtor's other advisors on key drivers and reasonable assumptions for

a business plan, and review of historical financial performance to support business projections.

Work also included analysis around the potential rebranding of the Company's stores, and

associated system requirement, which resulted in an agreement with an alternative oil supplier

that facilitated the negotiation of the ultimate Plan of Reorganization with JLI. The Applicant

also assisted the Debtors with their 2008 income statement and cash flow forecasts, with the

development of a reimaging program under JLI, and with communicating the components of the

plan to various constituents. In connection with this Subject Matter, A&M expended (i) 732.7

hours during the Third Interim Application for which A&M seeks interim compensation in the

amount of $322,490.00, and (ii) 1,851.9 hours during the Final Application Period for which

A&M seeks final compensation of $866,300.00.

      e.     Cash – The Applicant assessed the Debtors' cash flow requirements and cash

management process and assisted the Debtors with the preparation of weekly and monthly cash

flow forecasts, budget vs. actual reports, and reporting on cash results to various constituents.

The Applicant worked with the Debtors throughout the case to manage liquidity and limit

required borrowing under the DIP credit facility. In connection with this Subject Matter, A&M

expended (i) 137.4 hours during the Third Interim Application for which A&M seeks interim

compensation in the amount of $52,015.00, and (ii) 323.9 hours during the Final Application

Period for which A&M seeks final compensation of $126,805.00.

      f.     Claims – The Applicant assisted the Debtors with all aspects of the claim process

from the development of a Bar Date notice and claim form to the categorization and

reconciliation of claims received, to the preparation of materials to support the claims objection

and resolution process. In addition the Applicant worked with the Debtor to address claims filed

under section 503(b)(9) of the Bankruptcy Code and to calculate cure costs for contracts to be

assumed. The Applicant also performed a preliminary analysis of potential claims prior to the

Bar Date to assist in sizing potential exit financing requirements. Finally the Applicant assisted

in coordinating information on claims necessary for the balloting process. The Applicant

leveraged many aspects of the claims reconciliation process to the Debtors' employees in order

to minimize fees in this area. In connection with this Subject Matter, A&M expended (i) 790.5

hours during the Third Interim Application for which A&M seeks interim compensation in the

amount of $238,926.00, and (ii) 988.9 hours during the Final Application Period for which A&M

seeks final compensation of $304,444.00.

      g.     Contract Negotiations – The Applicant spent a significant amount of effort

working with the Debtors and Debtors' counsel on assessing certain contracts critical to the

Company and potential costs and benefits of assuming or rejecting these contracts. The

Applicant also spent substantial time assessing the potential costs of rejecting existing contracts

with JLI and SOPUS which ultimately provided critical information in negotiating a fully

consensual Plan. In connection with this Subject Matter, A&M expended (i) 65.1 hours during

the Third Interim Application for which A&M seeks interim compensation in the amount of

$19,620.00, and (ii) 338.0 hours during the Final Application Period for which A&M seeks final

compensation of $104,380.00.

      h.     Court Hearings – Less than 1% of the fees in this Application relate to time spent

preparing for and participating in court hearings as required to support various motions of the

Debtors. In connection with this Subject Matter, A&M expended (i) 8.6 hours during the Third

Interim Application for which A&M seeks interim compensation in the amount of $3,830.00,

and (ii) 53.8 hours during the Final Application Period for which A&M seeks final compensation

of $22,050.00.

     i.     Creditor – The Applicant assisted the Debtors with several presentations on the

Company and its 2008 business plan to creditor constituencies and held other discussions with

these constants on the status and timeline for the bankruptcy proceeding as well as laying the

groundwork for negotiation of a plan of reorganization.   The Applicant also briefed the creditor

constituencies on plans regarding store closures, lease assumptions, and contract renegotiations.

The time spent keeping the various creditor constituencies informed helped to build the

foundation for a fully consensual Plan.  In connection with this Subject Matter, A&M expended

(i) 79.6 hours during the Third Interim Application for which A&M seeks interim compensation

in the amount of $30,815.00, and (ii) 309.4 hours during the Final Application Period for which

A&M seeks final compensation of $131,030.00.

     j.     DIP – The Applicant assisted the Debtors with negotiating a DIP credit facility

with its equity sponsor, preparing reporting under the DIP credit agreement and forecasting

covenant compliance, and negotiating two waivers under the agreement.  In connection with this

Subject Matter, A&M expended (i) 5.0 hours during the Third Interim Application for which

A&M seeks interim compensation in the amount of $1,650.00, and (ii) 140.4 hours during the

Final Application Period for which A&M seeks final compensation of $71,690.00.

     k.     Employee Retention – Applicant assisted the Debtors with developing a

multifaceted employee incentive and retention program and negotiating with the Debtors'

lenders and the Committee to achieve their support for the program.  In connection with this

Subject Matter, A&M expended 129.4 hours during the Final Application Period for which

A&M seeks final compensation of $57,205.00.

      l.      Fee Applications – The Applicant spent 1% of the fees in this Application in

preparing monthly and interim fee statements in compliance with court guidelines.  In connection

with this Subject Matter, A&M expended (i) 67.2 hours during the Third Interim Application for

which A&M seeks interim compensation in the amount of $13,052.50, and (ii) 184.6 hours

during the Final Application Period for which A&M seeks final compensation of $35,723.00.[3]

      m.      Information Requests – The Applicant spent significant time coordinating

information requests from the pre-petition lenders, the Committee, potential rebranding partners,

and their financial advisors and analyzing data and working with the Debtors to develop the

information necessary to respond to these information requests.  The responses to these

information requests allowed the Debtors' constituents to monitor the Debtors' performance and

develop the necessary fact base to negotiate the Plan.  In connection with this Subject Matter,

A&M expended (i) 100.3 hours during the Third Interim Application for which A&M seeks

interim compensation in the amount of $29,765.00, and (ii) 527.8 hours during the Final

Application Period for which A&M seeks final compensation of $180,345.00.

      n.      Jiffy Lube International ("JLI") Discovery – The Applicant assisted the Debtor in

preparing and compiling data in compliance with discovery requests from JLI.  One of the

Applicant's professionals, acting as the Debtors' representative, was also deposed by counsel to

JLI.  In connection with this Subject Matter, A&M expended (i) 33.1 hours during the Third

Interim Application for which A&M seeks interim compensation in the amount of $11,120.00,

---

[3] The Applicant will invoice the Reorganized Debtors separately for the fees associated with the preparation of this Final Application.

and (ii) 63.1 hours during the Final Application Period for which A&M seeks final compensation of $26,270.00.

o.       Lease Analysis – The Applicant devoted considerable effort the assessing the profitability of the Debtors' 439 stores, evaluating the leases for these locations, and determining with the Debtor's management a plan to rationalize the store base to the approximately 393 continuing stores at emergence from bankruptcy.  The Applicant worked closely with the Debtors and their Omaha counsel to lead a coordinated lease renegotiation effort that led to almost 100 lease amendments generating approximately $4.5 million in value for the Debtors, as well as significant operating flexibility from modifications to lease terms.  In order to maximize time to evaluate options, the Applicant spearheaded an effort to seek voluntary extensions of the deadline to assume or reject real property leases with the landlords for over a hundred of the Debtors' stores.  The Applicant also reviewed the market rent associated with certain leases to maximize negotiating leverage and worked with the Debtor to implement a plan to successfully mitigate lease rejection damages.  In connection with this Subject Matter, A&M expended (i) 356.8 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $136,995.00, and (ii) 1,253.7 hours during the Final Application Period for which A&M seeks final compensation of $468,190.00.

p.       Monthly Operating Report – The Applicant assisted the Debtors with the preparation of the Monthly Operating Reports and related information required by the U.S. Trustee.  In addition, the Applicant assisted the Debtors with the implementation of the American Institute of Certified Public Accounts ("AICPA") Statement of Position on Financial Reporting by Entities in Reorganization under the Bankruptcy Code (SOP 90-7).  In connection with this Subject Matter, A&M expended (i) 38.7 hours during the Third Interim Application for

which A&M seeks interim compensation in the amount of $10,540.00, and (ii) 147.6 hours during the Final Application Period for which A&M seeks final compensation of $50,315.00.

q.    Operations – The Applicant assisted the Debtors with various matters associated with assessing and improving the performance of the business and implementing their business plan. These activities included the development and deployment of new end to end sales and customer services training models around key product lines, analysis and implementation of two successful price increases, and reviews of underperforming regions and operational improvement opportunities. In connection with this Subject Matter, A&M expended (i) 33.1 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $11,675.00, and (ii) 647.5 hours during the Final Application Period for which A&M seeks final compensation of $311,705.00.

r.    Plan of Reorganization – The Applicant assisted the Debtors and counsel in the preparation of the Disclosure Statement and Plan and in particular in the preparation of the various financial analysis, proforma financial statements, contract schedules, and other disclosures required. In connection with this Subject Matter, A&M expended 149.4 hours during the Third Interim Application and Final Application Period for which A&M seeks interim and final compensation of $57,150.00.

s.    Point of Sale – The Applicant assisted the Debtor in evaluating the potential to implement a new point of sale system. In connection with this Subject Matter, A&M expended 41.5 hours during the Final Application Period for which A&M seeks final compensation of $21,740.00.

t.      Retention – Applicant occurred minimal time associated with completing its retention in this matter.  In connection with this Subject Matter, A&M expended (i) 2.9 hours during the Final Application Period for which A&M seeks final compensation of $915.00.

u.      Statements and Schedules – The Applicant worked closely with the Debtors to assemble a database of information on all aspects of the Debtor's assets, liabilities, and financial transactions required to prepare the Statement of Financial Affairs and the Schedules of Assets and Liabilities (the "Statements and Schedules").  The Applicant worked to appropriately categorize this information among the 10 Debtor entities and to provide adequate disclosures and footnotes to the Statements and Schedules.  These efforts ultimately allowed for the filing of the Statements and Schedules by the court ordered deadline of April 7, 2008.  The Applicant also worked with the Debtor on subsequent amendments to select areas of the Statements and Schedules.  In connection with this Subject Matter, A&M expended (i) 8.2 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $3,425.00, and (ii) 991.2 hours during the Final Application Period for which A&M seeks final compensation of $316,265.00.

v.      Tax - The Applicant supported the Debtors' tax advisor in their effort to estimate the net operating loss and other tax attributes and considerations for the Plan and Disclosure Statement.  In connection with this Subject Matter, A&M expended (i) 12.8 hours during the Third Interim Application for which A&M seeks interim compensation in the amount of $5,735.00, and (ii) 19.7 hours during the Final Application Period for which A&M seeks final compensation of $9,185.00.

22.    The hours expended and the professional fees charged by Applicant on the Debtor's behalf are reasonable, necessary and appropriate under the circumstances.

## VI.    EVALUATION STANDARDS

23.    Pursuant to 11 U.S.C. § 330(a), the Court may award a retained professional "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).  In determining reasonableness of the proposed fee award the Court is directed by Bankruptcy Code section 330(a)(3) to consider (a) the time spent, (b) the rates charged, (c) whether the services were necessary to the administration of or beneficial to the case, (d) whether the services were performed within a reasonable time, given the complexity, importance, and nature of the task, (e) whether the professional person has demonstrated skill and experience in the bankruptcy field, and (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners. 11 U.S.C. § 330(a)(3).

24.    In the Fifth Circuit, the reasonableness of a bankruptcy fee award is further evaluated pursuant to a "lodestar" analysis, as considered in light of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).  The lodestar fee is equal to the number of hours reasonably expended multiplied by a reasonable hourly rate.  The lodestar is then adjusted to reflect the special circumstances of the case and the *Johnson* factors. *McClain v. Lufkin Indus.*, 2008 U.S. App. LEXIS 4451 *40-41 (5th Cir. 2008); *In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005), *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994); *In re Mirant Corp.*, 354 B.R. 113, 126, n.28 (Bankr. N.D. Tex. 2006).

25.    The sum of $3,302,892.00 in professional fees for the Final Application Period is reasonable compensation for the professional services rendered by Applicant based on

a lodestar analysis and the standards set forth in *Johnson*, 488 F.2d at 717-19, made applicable to

bankruptcy cases in *First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir.), *cert denied*,

431 U.S. 904 (1977), and as further explained in *In re Cahill*, 428 F. 3d 536, *In re Fender*, 12

F.3d 480, *In re Lawler*, 807 F.2d 1207 (5th Cir. 1987) and *Copper Liquor, Inc. v. Adolph Coors

Co.,* 684 F.2d 1087 (5th Cir. 1982).  Pursuant to such decisions, Applicant requests that the Court

consider the following factors in determining the reasonableness of the amount of professional

compensation requested by this Application:

     a.     <u>Time and Labor Required</u>.  Applicant expended 8,502.5 hours of professional

services on behalf of the Debtors during the Final Application Period, at an average billing rate

of $388.46 per hour.  During the Applicant's involvement in the case, there were significant

issues to address and accomplishments made as outlined in the above description of services.

     b.     <u>The novelty and difficulty of the case</u>.  The issues addressed by Applicant in

connection with its services to the Debtors were often novel and complex and required the

expertise of professionals with a specialized background in bankruptcy.

     c.     <u>The skill requisite to perform the services properly</u>.  The services performed by

Applicant's professionals required the skills of trained bankruptcy professionals, with an

appreciation and understanding of advanced chapter 11 concepts.  Applicant believes its

professionals demonstrated a high degree of skill in connection with its engagement on behalf of

the Debtors. The Applicants Managing Directors, Senior Directors, and Directors working on

this matter have significant restructuring and bankruptcy experience which is necessary to

effectively and efficiently address the wide range of business issues and bankruptcy related

matters critical to the Debtors' reorganization.

d.    <u>Preclusion of other employment</u>.  Although Applicant's services for the Debtors were often time-critical, the engagement did not preclude Applicant from accepting other engagements.  Nonetheless, a number of the Applicant's professionals working on this matter were exclusively or substantially focused on this client, while other professionals were utilized on a limited basis to minimize costs to the Debtors while meeting required deadlines.

e.    <u>The fee customarily charged</u>.  Applicant seeks allowance of professional fees based on hourly rates that are consistent with rates charged by Applicant to its other clients.  The hourly rate charged by Applicant is within the range of those customarily charged by other professionals having comparable skills and expertise in similar matters.

f.    <u>Whether the fee is fixed or contingent</u>.  Applicant's fees are fixed according to the time spent on behalf of the Debtors and Applicant's prevailing hourly rate.

g.    <u>Time limitations imposed by client or circumstances</u>.  Many of the matters that arose in connection with this case presented time-critical challenges for Applicant.

h.    <u>Amount involved and results obtained</u>.  Applicant provided critical timely assistance to the Debtors in this case resulting in the successful reorganization with a 100 cent Plan.

i.    <u>The experience, reputation and ability of the professional</u>.  Applicant was well qualified to provide professional services for the Debtors.  Applicant's Dean Swick, Julie Hertzberg and Brian Whittman are well qualified in bankruptcy and devoted significant time to this case.  Applicant's Kevin Redmon has significant business consulting experience and expertise in retail operations which are well suited to the needs of the Debtors.  The applicant's other professionals that assisted the Debtors in this case are likewise qualified and capable.

j.      Undesirability of the case.  While the applicant has offices in several US cities, the A&M professionals who have provided assistance to the Applicant have had to travel from Atlanta, Chicago, Houston and Dallas to provide services at the Debtors' headquarters in Omaha often spending the majority of each week at the Debtors' offices.  Additionally the Applicant was not retained until approximately one month after the Debtors' Chapter 11 petition was filed.

k.      Nature and length of the professional relationship with the client.  Applicant did not have a prior relationship with the Debtors.

l.      Awards in similar cases.  The Applicant believes the professional fees sought hereunder are consistent with fees charged by similarly skilled professionals for comparable services in other bankruptcy cases.  The fees sought by this Application are based on hourly rates that are Applicant's customary and usual rates for its other clients for similar services.  Further, the hourly rate charged by Applicant is within the range of those customarily charged by other professionals having comparable skills and expertise in similar matters.

26.   Based on the criteria outlined in 11 U.S.C. § U.S.C. § 330(a)(3) and the lodestar analysis, as evaluated in terms of the Johnson factors, Applicant believes the professional fees requested are reasonable considering the nature and extent of the services provided by Applicant.  As noted previously, the result in this case, a 100 cent Plan, speaks for itself.

## EXPENSES

27.   The out-of-pocket expenses incurred by Applicant during the Final Application Period total $217,585.22.  Alvarez & Marsal professionals have been required to be on site at Heartland's offices in Omaha, Nebraska for a majority of the case; as a result, there

have been significant travel, lodging, and related expenses incurred. Alvarez & Marsal professionals have also been required to attend certain bankruptcy court hearings in Ft. Worth, Texas. The Applicant submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual cost incurred.

28.    The Applicant has worked with the Debtors to reduce expenses by negotiating preferential lodging rates near the Debtors' offices.

## NOTICE

29.    Notice of this Final Application has been provided to (i) the Debtors; (ii) the US Trustee; (iii) counsel for the Debtors' prepetition lenders; (iv) counsel for the Debtors' post-petition lenders; and (v) the Committee in accordance with the Interim Compensation Order and the Confirmation Order. The Applicant submits that under the circumstances no other or further notice is necessary.

## PRAYER FOR RELIEF

30.    Accordingly, the Applicant herein, Alvarez & Marsal North America, LLC, prays that the Court enter an order (a) approving and allowing on an interim and final basis (i) compensation of the Applicant during the Interim Application Period in the amount of $985,923.50 and (ii) reimbursement to the Applicant of out-of-pocket expenses incurred during the Interim Application Period in the amount of $60,858.37; (b) approving and allowing on a final basis (i) compensation of the Applicant during the Final Application Period in the aggregate amount of $3,302,892.00 and (ii) reimbursement to the Applicant of out-of-pocket expenses incurred during the Final Application Period in the aggregate amount of $217,585.22; (c)

directing the Debtors to pay to the Applicant the sum of $272,017.15, which such amount is

equal to the amount of fees and expenses sought by the Applicant, less amounts previously paid

to the Applicant; and (d) granting any such other and further relief to which the Applicant is

justly entitled.

DATED: March 13, 2009

Respectfully submitted,

Brian C. Whittman
ALVAREZ & MARSAL NORTH AMERICA, LLC
55 West Monroe Street
Suite 4000
Chicago, IL 60603
(312) 601-4227 Telephone
(312) 803-1875 Fax

Restructuring Advisors for Debtors

## CERTIFICATION OF CERTIFYING PROFESSIONAL

The undersigned hereby certifies that the undersigned has been designated by Alvarez & Marsal North America LLC as the certifying professional with respect to the Final Application, and that (a) the undersigned has read the Final Application; (b) to the best of the certifying professional's knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines for Compensation and Expense Reimbursement of Professionals for the United States Bankruptcy Court, Northern District of Texas, effective January 1, 2001; and (c) the compensation and expense reimbursement requested are billed at rates in accordance with practices no less favorable than those customarily employed by Alvarez & Marsal North America LLC and generally accepted by Alvarez & Marsal North America LLC clients for similar services.

The certifying professional certifies under penalty of perjury that the information contained in the Final Application and the foregoing statements are true and correct to the best of his/her knowledge.

Brian C. Whittman

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he has authorized Epiq Bankruptcy Solutions, LLC as service agent, to serve a true and correct copy of the foregoing document (without exhibits) upon all parties listed on the Limited Service List via first class, postage prepaid U.S. mail, on the 13th day of March, 2009 in accordance with the Federal Rules of Bankruptcy Procedure. Exhibits are available upon request by contacting Linda Breedlove at 817-877-4829 or via email at lbreedlove@forsheyprostok.com.


/s/ Jeff P. Prostok